**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE HUNTINGTON NATIONAL BANK, successor by merger to CADENCE BANK,** | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 26-cv-333** |
| **v.** | ) | |
| **W POWER INCORPORATED and WILLIAM DICKERSON,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** The Huntington National Bank, successor by merger to Cadence Bank (the "Bank"), and for its Complaint against Defendants W Power Incorporated (the "Borrower") and William Dickerson (the "Guarantor" and, together with Borrower, the "Defendants"), respectfully shows the Court as follows:

## I.

## PARTIES

1. Bank is The Huntington National Bank, successor by merger to Cadence Bank, a national banking association which, pursuant to its articles of association, has its main office located in Columbus, Ohio, and is authorized to do business in the State of Alabama. Bank brings this action as successor by merger to Cadence Bank and as the current holder of all rights and remedies under the Loan Documents (as hereinafter defined). For purposes of diversity jurisdiction, Bank, as a national banking association, is a citizen of the State of Ohio, the state designated in its articles of association as the location of its main office. 28 U.S.C. § 1348.

2. Defendant W Power Incorporated (“Borrower”) is an Alabama corporation with its chief executive office and registered office located at 10956 Elysian Circle, Daphne, Alabama 36526-8497, within Baldwin County, Alabama. For purposes of diversity jurisdiction, Borrower is a citizen of the State of Alabama, both as its state of incorporation and as the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

3. Defendant William Dickerson (“Guarantor”) is an adult individual who is a citizen of, and is domiciled in, the State of Alabama, residing, upon information and belief, at 10956 Elysian Circle, Daphne, Alabama 36526-8497, within Baldwin County, Alabama, and who also serves as W Power Incorporated’s registered agent at 111 Kentwood Drive, Daphne, Alabama 36526.

## II.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states, and the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs. As set forth above, Bank is a citizen of Ohio, and Defendants are citizens of Alabama, such that complete diversity of citizenship exists among the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant W Power Incorporated's registered office and principal place of business are located in Baldwin County, Alabama, within this District, such that Defendants reside within this judicial district.

6. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant William Dickerson is domiciled, and therefore resides, in Baldwin County, Alabama, within this District.

7. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein – including the execution of the Loan Documents and Defendants' defaults – occurred in Baldwin County, Alabama, within this District.

## III.

## FACTUAL BACKGROUND

### A. Loan 1 – Equipment Finance Term Loan

8. On February 25, 2025, Borrower executed and delivered to Cadence Bank a One-Year Adjustable-Rate Term Note (the "Loan 1 Note") in the original principal amount of $1,500,000.00 (Loan No. 365001174933) ("Loan 1"). A true and correct copy of the Loan 1 Note is attached hereto as **Exhibit A** and incorporated herein by reference.

9. Pursuant to the Loan 1 Note, Borrower agreed to repay Loan 1 in seventy-two (72) consecutive monthly installments of principal and interest, in the amount of $25,832.31, commencing March 27, 2025, with an initial fixed interest rate of 7.25% per annum, and a maturity date of February 27, 2031. [Exhibit A, Loan 1 Note § 1].

10. As security for the Loan 1 Note, Borrower executed and delivered to Bank a Security Agreement dated February 25, 2025 (the "Loan 1 Security Agreement"), granting Bank a security interest in, among other things, certain equipment identified as a **2009 Liebherr LTM1500-8.1 600-ton crane, Serial No. 073235**, together with all proceeds, products, and accessions thereof (the "Loan 1 Collateral"). A true and correct copy of the Loan 1 Security Agreement is attached hereto as **Exhibit B** and incorporated by reference.

11. Bank perfected its security interest in the Loan 1 Collateral by filing UCC-1 Financing Statements with the Alabama Secretary of State on February 25, 2025 (File No. 25-7088600FS) and March 27, 2025 (File No. 25-7151025FS), the latter as amended by that certain UCC-3 Financing Statement filed with the Alabama Secretary of State on August 3, 2026 (File No. 25-7151025) (collectively, the "Loan 1 Financing Statement"). True and correct copies of the Loan 1 Financing Statement are attached hereto as **Exhibit C** and incorporated by reference.

12. On February 25, 2025, Guarantor executed and delivered to Bank an Unlimited Guaranty (the "Loan 1 Guaranty") pursuant to which Guarantor absolutely, unconditionally, and irrevocably guaranteed the full and punctual payment to Bank of all sums presently or in the future due and owing from Borrower to Bank, including all sums due under the Loan 1 Note. The Loan 1 Guaranty provides that Guarantor's liability is direct and unconditional and due immediately upon any default by Borrower, without demand or notice. A true and correct copy of the Loan 1 Guaranty is attached hereto as **Exhibit D**

and incorporated by reference. The Loan 1 Note, the Loan 1 Security Agreement, the Loan 1 Financing Statement, the Loan 1 Guaranty and all other documents evidencing, securing, guaranteeing, or otherwise relating to Loan 1 shall hereinafter collectively be referred to as the "Loan 1 Loan Documents."

**B. Loan 2 – Revolving Line of Credit.**

13. On May 21, 2025, Borrower executed and delivered to Cadence Bank a Revolving Term Note (the "Loan 2 Note" and together with the Loan 1 Note, the "Notes") in the maximum principal amount of $480,000.00 (Loan No. 366001182006) (the "Loan 2" and together with Loan 1, the "Loans"). A true and correct copy of the Loan 2 Note is attached hereto as **Exhibit E** and incorporated by reference.

14. The Loan 2 Note bears interest at the Wall Street Journal Prime with accrued interest payable monthly in arrears on the 8th day of each month and originally matured on November 8, 2025. [Exhibit E, Loan 2 Note §§ 1 and 2].

15. As security for the Loan 2 Note, Borrower executed and delivered to Bank a Security Agreement dated May 21, 2025 (the "Loan 2 Security Agreement" and together with the Loan 1 Security Agreement, the "Security Agreements"), granting Bank a security interest in, among other things, certain equipment identified as a **2006 Grove GMK6300/6350 all-terrain crane, Serial No. 63009099**, together with all proceeds, products, and accessions thereof (the "Loan 2 Collateral" and, together with the Loan 1 Collateral, the "Collateral"). A true and correct copy of the Loan 2 Security Agreement is attached hereto as **Exhibit F** and incorporated by reference.

16. Bank perfected its security interest in the Loan 2 Collateral by filing UCC-1 Financing Statements with the Alabama Secretary of State on May 6, 2024 (File No. 24-7221797FS) and May 27, 2025 (File No. 25-7286495FS) (collectively, the "Loan 2 Financing Statements" and together with the Loan 1 Financing Statement, the "Financing Statements"). True and correct copies of the Loan 2 UCC-1 Financing Statements are attached hereto collectively as **Exhibit G** and incorporated by reference.

17. On May 21, 2025, Guarantor executed and delivered to Bank an Unlimited Guaranty (the "Loan 2 Guaranty" and, together with the Loan 1 Guaranty, the "Guaranties") pursuant to which Guarantor absolutely, unconditionally, and irrevocably guaranteed the full and punctual payment to Bank of all sums presently or in the future due and owing from Borrower to Bank, including all sums due under the Loan 1 and Loan 2 Notes. A true and correct copy of the Loan 2 Guaranty is attached hereto as **Exhibit H** and incorporated by reference.

18. On or about December 10, 2025, Borrower and Bank executed a Maturity Date Extension or Payment Deferral Agreement (the "Extension Agreement") extending the maturity date of the Loan 2 Note from November 8, 2025, to February 8, 2026, with all other terms of the Loan 2 Note remaining in full force and effect. The maturity date of the Loan 2 Note was thereafter automatically renewed to February 8, 2027. A true and correct copy of the Extension Agreement is attached hereto as **Exhibit I** and incorporated by reference. The Loan 2 Note, the Loan 2 Security Agreement, the Loan 2 Guaranty, the Loan 2 Financing Statements, the Extension Agreement, and all other documents evidencing, securing, guaranteeing, or otherwise relating to Loan 2 are referred to collectively herein as the "Loan 2 Loan Documents." The Loan 1 Loan Documents and the Loan 2 Loan Documents shall hereinafter collectively be referred to as the "Loan Documents."

## C. Defaults and Notice of Default

19. Each of the Loan Documents contains a cross-default provision, such that a default under any one Loan Document constitutes an Event of Default under all of the Loan Documents securing both Loan 1 and Loan 2.

20. Borrower has failed to make the monthly installments of principal and interest due under the Loan 1 Note, in breach of Section 1 (Promise to Pay) of the Loan 1 Note, constituting an Event of Default under Section 10(1) of the Loan 1 Note.

21. The Loan 1 Note is past due for the March 27, 2026, installment, and all installments coming due thereafter. As of July 23, 2026, the past-due amount under the Loan 1 Note was $108,495.74 (consisting of $103,329.24 in principal and interest and $5,166.50 in late charges), exclusive of interest, late charges, fees, costs, and attorneys' fees continuing to accrue thereafter.

22. Borrower has failed to make required interest payments due under the Loan 2 Note, in breach of Section 1 (Promise to Pay) of the Loan 2 Note, constituting an Event of Default under Section 8(1) of the Loan 2 Note. The foregoing failures to pay are hereinafter collectively referred to herein as the "Existing Defaults").

23. The Loan 2 Note is past due for the March 8, 2026, payment, and all payments coming due thereafter. As of July 23, 2026, the past-due amount under the Loan 2 Note was $14,741.48 in unpaid interest, exclusive of interest, late charges, fees, costs, and attorneys' fees continuing to accrue thereafter.

24. On July 28, 2026, counsel for Bank sent to Defendants a Notice of Default, Demand for Payment and Reservation of Rights (the "Default Notice"), (i) notifying Defendants of the Existing Defaults, (ii) demanding that Borrower cure the Existing Defaults within ten (10) days of the date of the letter, and (iii) reserving all of Bank's rights and remedies, including the right to accelerate all sums due under the Loans. A true and correct copy of the Default Notice, together with proof of mailing, is attached hereto as **Exhibit J** and incorporated by reference.

25. More than ten (10) days have elapsed since the date of the Default Notice, and the Existing Defaults have not been cured.

26. Upon an Event of Default, the Loan Documents entitle Bank, at its election and without further notice or demand, to declare all obligations under the Notes immediately due and payable and to enforce its liens and security interests against the Collateral. [Exhibit A, Loan 1 Note § 10; Exhibit E, Loan 2 Note § 8; Exhibit B, Loan 1 Security Agreement § 5.2; Exhibit F, Loan 2 Security Agreement § 5.2].

27. The Loan Documents further provide that, upon an Event of Default, Borrower is obligated to pay a late charge equal to five percent (5%) of any payment that remains unpaid for ten (10) days or more, in addition to any other sums due. [Exhibit A, Loan 1 Note § 17; Exhibit E, Loan 2 Note § 15].

28. In addition, upon an Event of Default, the Loan Documents obligate Defendants, jointly and severally, to pay all of Bank's costs of collection, including reasonable attorneys' fees and expenses, incurred in establishing, maintaining, protecting, or enforcing Bank's rights under the Loan Documents or its security interest in the Collateral, whether or not suit is filed, and including amounts accruing after the filing of any bankruptcy petition. [Exhibit A, Loan 1 Note § 17; Exhibit E, Loan 2 Note § 15; Exhibit B, Loan 1 Security Agreement § 6.1; Exhibit F, Loan 2 Security Agreement § 6.1; Exhibit D, Loan 1 Guaranty; Exhibit H, Loan 2 Guaranty].

29. By virtue of the Existing Defaults, Bank has elected to accelerate, and hereby accelerates, all sums due and owing under the Notes, such that the entire unpaid principal balance of each Note, together with all accrued and unpaid interest, late charges, fees, costs, and attorneys' fees, is immediately due and payable in full.

30. The current payoff amount of the Loan 1 Note as of August 14, 2026, is $1,327,605.13, consisting of $1,276,081.47 in principal, $32,304.73 in accrued interest, $12,760.81 prepayment fee, and $6,458.12 in late charges (exclusive of attorney fees and costs and accruing interest, fees and lates charges). Interest continues to accrue at a rate of $256.98862 per diem.

31. The current payoff amount of the Loan 2 Note as of August 14, 2026, is $495,289.97, consisting of $474,563.03 in principal, $19,368.47 in accrued interest, and $1,358.47 in late charges (exclusive of attorney fees and costs and accruing interest, fees and lates charges). Interest continues to accrue at a rate of $88.98056 per diem.

## IV.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract - Loan 1 Note – Against W Power Incorporated)

32. Bank incorporates the foregoing paragraphs as if fully restated herein.

33. The Loan 1 Note is a valid and enforceable contract between Borrower and Bank.

34. Bank performed all of its obligations under the Loan 1 Note, including funding Loan 1.

35. Borrower breached the Loan 1 Note by failing to make payments when due, as described above.

36. As a direct and proximate result of Borrower's breach, Bank has suffered damages, including the unpaid principal balance, accrued and unpaid interest, late charges, and attorneys' fees and costs, in an amount to be proven at trial but not less than the amounts described in Paragraph 30 above.

### COUNT II
### (Breach of Contract - Loan 2 Note – Against W Power Incorporated)

37. Bank incorporates the foregoing paragraphs as if fully restated herein.

38. The Loan 2 Note is a valid and enforceable contract between Borrower and Bank.

39. Bank performed all its obligations under the Loan 2 Note, including making advances available to Borrower.

40. Borrower breached the Loan 2 Note by failing to make required interest payments when due, as described above.

41. As a direct and proximate result of Borrower's breach, Bank has suffered damages, including the unpaid principal balance, accrued and unpaid interest, late charges, and attorneys' fees and costs, in an amount to be proven at trial but not less than the amounts described in Paragraph 31 above.

**COUNT III**
**(Breach of Contract - Guaranties – Against William Dickerson)**

42. Bank incorporates the foregoing paragraphs as if fully restated herein.

43. Pursuant to the Guaranties, Guarantor unconditionally guaranteed payment of all amounts due under the Notes upon demand by Bank.

44. Bank has demanded that Guarantor pay the amounts due and owing under the Notes.

45. Guarantor has failed and refused to perform under the Guaranties by failing and refusing to pay the amounts due and owing under the Notes.

46. As a direct and proximate result of Guarantor's breach of the Guaranties, Bank has suffered damages including the unpaid principal balance, accrued and unpaid interest, late charges, and attorneys' fees and costs, in an amount to be proven at trial but not less than the amounts described in Paragraphs 30 through 31 above.

**COUNT IV**
**(Detinue and Enforcement of Security Interest – Recovery of Possession of Collateral – Against W Power Incorporated)**

47. Bank incorporates the foregoing paragraphs as if fully restated herein.

48. Bank holds a valid, enforceable, and perfected first-priority security interest in the Collateral pursuant to the Security Agreements and as perfected by the Financing Statements.

49. Events of Default have occurred and are continuing under the Loan Documents.

50. Pursuant to Ala. Code § 7-9A-609 and the terms of the Security Agreements, Bank is entitled, upon an Event of Default, to take possession of the Collateral and to exercise all other rights and remedies of a secured party under applicable law.

51. Bank is further entitled to recover possession of the Collateral by an action in the nature of detinue pursuant to Ala. Code § 6-6-250, et seq. Bank expressly reserves the right to seek the pre-judgment seizure of the Collateral pursuant to Fed. R. Civ. P. 64(a)–(b) and Ala. Code § 6-6-250, et seq., by separate motion at such time as Bank deems necessary.

52. Bank is the party entitled to possession of the Collateral, is entitled to immediate possession thereof, and, upon information and belief, the Collateral has not been taken for any tax, assessment, or fine levied against it pursuant to law, or seized under any execution or attachment against Bank's property.

53. Bank is entitled to a judgment granting it the right to immediate possession of the Collateral or, alternatively, to damages equal to the value of the Collateral, together with a determination that Bank's security interest in the Collateral is valid, enforceable, and superior to any interest of Defendants or any other party.

**COUNT V**
**(Unjust Enrichment / Quantum Meruit (Pled in the Alternative) – Against All Defendants)**

54. Bank incorporates the foregoing paragraphs as if fully restated herein.

55. To the extent any of the Loan Documents are determined to be invalid or unenforceable, Defendants have accepted and received the benefits of, and have been substantially benefited by, the loans described herein. Defendants knew, or should have known, that Bank expected and was entitled to repayment of the loans.

56. Defendants are liable to Bank under the doctrines of quantum meruit and/or unjust enrichment in an amount equal to the reasonable value of the unpaid principal, accrued interest, late fees, and other fees, expenses, and charges owed under the Loan Documents, together with attorneys' fees and costs and all other legally recoverable amounts.

**RESERVATION OF RIGHTS**

57. Bank reserves the right to amend this Complaint and to assert any additional claims, causes of action, or theories of recovery, and to seek any and all other relief to which it may be entitled, whether or not specifically pled herein, as may become known through discovery or otherwise.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Bank respectfully prays that this Court enter judgment in its favor and against Defendants, jointly and severally as applicable, for:

A. The unpaid principal balance due under the Notes;

B. All accrued and unpaid interest due under the Notes through the date of judgment;

C. All late charges, fees, expenses, and costs (exclusive of attorneys' fees) due and owing under the Loan Documents;

D. All attorneys' fees and costs incurred by Bank in connection with the Existing Defaults, both incurred to date and to be incurred in the future;

E. A judgment granting Bank the right to immediate possession of the Collateral, or, alternatively, damages equal to the value thereof;

F. Pre-judgment and post-judgment interest at the contract default rate, or, if inapplicable, at the legal rate;

G. Costs of this action; and

H. Such other and further relief as this Court deems just and proper.

**DONE** and **DATED** this the 20th day of August 2026.

/s/ Rita L. Hullett
Rita L. Hullett – HUL006
T. Parker Griffin, Jr. – GRI084
Nolan Clark – CLA130
Attorneys for The Huntington National Bank, successor by merger to Cadence Bank
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
E-mail: rhullett@bradley.com
pgriffin@bradley.com
nclark@bradley.com